**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. ______________________**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **VERIFIED COMPLAINT FOR FORFEITURE IN REM**

**1,297,132.801478 USDT ASSOCIATED WITH WALLET ADDRESS TB2wk** **DEFENDANT**

* * * * *

The Plaintiff, United States of America, hereby brings this complaint and alleges as follows in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and 18 U.S.C. § 983.

## NATURE OF THE ACTION

1. This is a civil action in rem brought pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a) as a result of violations of 18 U.S.C. §§ 1956, 1957, and/or 1960 and 21 U.S.C. §§ 841 and/or 846.

## THE DEFENDANT IN REM

2. The Defendant is 1,297,132.801478 USDT associated with Tether wallet address TB2wknn16HXw2tkgY7c6vbgfR5bE6Lrvf6 ("TB2Wk") (hereinafter the "Defendant Cryptocurrency"), which was seized on or about August 4, 2026. The property is in the custody of the United States Marshals Service in the Eastern District of Kentucky.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1345 and 1355(a).

4. This Court has in rem jurisdiction over the Defendant Cryptocurrency pursuant to 28 U.S.C. § 1355(b). Upon filing of the Complaint, the United States requests that the Clerk of the Court issue an arrest warrant in rem pursuant to Supplemental Rule G(3)(b)(i), which the United States will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395(a) through (c) because acts or omissions giving rise to this forfeiture action took place in this district and the Defendant Cryptocurrency currently is located in this district.

## FACTS GIVING RISE TO FORFEITURE

6. This action stems from an ongoing criminal investigation by the Drug Enforcement Administration (DEA) into a multi-faceted money-laundering and drug-trafficking-organization (ML/DTO) that is laundering suspected drug proceeds in the United States back to source countries, primarily Colombia, utilizing a cash-for-crypto method.

7. Cash-for-cryptocurrency, also known as cash-for-crypto, is a money-laundering method that involves the transaction of bulk quantities of fiat currency in exchange for cryptocurrency to allow for the instantaneous and covert transfer of illicit proceeds in an effort to evade detection and seizure by law enforcement. Cash-for-crypto brokers will be contacted by a ML/DTO source to coordinate a cash-for-crypto exchange. The ML/DTO source directs one or more co-conspirators to deliver bulk-cash proceeds to the broker, and the broker finds a buyer for the bulk cash, who possesses an equivalent amount of cryptocurrency. The ML/DTO source

sends a destination wallet address to the broker, while the broker will send his/her pass-through wallet address to the bulk-cash buyer. Once the broker collects the bulk-cash drug proceeds, he or she will verify to the bulk-cash buyer who then sends the cryptocurrency to the pass-through wallet address. Once the broker receives the cryptocurrency, he or she then sends it to the destination address provided by the ML/DTO source, less minimal brokerage fees. Once the ML/DTO source's destination address receives the cryptocurrency, he or she typically sends the cryptocurrency on to other destination wallet addresses, using multiple addresses and transactions and smaller amounts than the original sum, to obfuscate their criminal activity. After one more transactions to one or more wallet addresses, the other ML/DTO co-conspirators will sell the cryptocurrency in exchange for fiat currency at the final destination.

8. As part of its investigation, DEA has engaged a confidential source ("CS"), who has entered into contracts with Colombia-based cash-for-crypto brokers. The CS began working with DEA in August 2025 and has worked for over ten years for money-laundering organizations focusing on the cash-for-crypto method. The CS has no criminal history in the United States and currently is working for monetary compensation.

9. DEA has conducted three money pickups in the United States as part of its investigation. Once the money was picked up, the funds were deposited in an undercover account in the Eastern District of Kentucky and then converted to cryptocurrency. In particular, a target of the investigation located in Colombia ("Target 1") provided the CS with a cryptocurrency wallet address, and an undercover actor at DEA then sent the funds from this district to the wallet address provided by Target 1 to the CS.

10. The CS began communicating with Target 1 in February 2026 via the Signal encrypted messaging application. Target 1 has given the CS several contracts to convert

cryptocurrency into Colombian pesos. To date, the CS has converted approximately $400,000 in cryptocurrency into Colombian pesos for Target 1, at the direction of the DEA.

11. There is reason to believe that the cryptocurrency received as part of those contracts came from the sale of illicit drugs.

12. One of the addresses that Target 1 sent to the CS sent approximately 30,000 USDT to wallet address TJBvJ, which then sent 16,000 USDT to two addresses being monitored by DEA as part of a narcotics investigation. Wallet address TJBvJ also sent approximately 25,000 USDT to wallet address TKnhb, which was linked to a money pickup of funds obtained from the sale of illegal drugs. Investigators attributed TKnhb to a Chinese individual who was involved in drug trafficking and money laundering.

13. Target 1 also provided the CS with an address that had received 190,000 USDT indirectly from an address associated with a Homeland Security Investigations (HSI) money-laundering investigation involving laundering of drug-trafficking proceeds.

14. On or about March 17, 2026, Target 1 reached out to the CS via Signal about transferring approximately 139,000.00 USDT from a cryptocurrency address associated with Target to an address associated with another target of the investigation located in Colombia (“Target 2”).

15. The CS previously had converted approximately $650,000 in cryptocurrency to Colombian pesos for Target 2 at the direction of the DEA.

16. There is reason to believe that Target 2 previously worked with an Ecuadorian national responsible for coordinating bulk-cash money pickups of drug proceeds in Ecuador, converting that bulk cash to cryptocurrency, and then transferring it to Target 2.

17. Target 1 provided the CS with an address for an unhosted wallet, wallet address TLDSo, which sent 139,275 USDT to the CS on March 17, 2026. The CS then transferred the 138,696 of the USDT from TLDSo to another unhosted wallet address associated with Target 2. Through a series of three sequential hops 15,000 USDT of the USDT from wallet address TLDSo was sent to another unhosted wallet, Tether wallet address TB2wk.

18. Money launderers commonly use unhosted wallets to remain anonymous and avoid detection by law enforcement.

19. With an unhosted wallet, a user needs to pay "gas fees" to send USDT via the TRON network. Users send Tronix (TRX) to pay the gas fees for such transactions. Thus, investigators can connect individuals associated with unhosted wallets by following the trail of TRX used to fund specific transactions to a virtual currency exchange that collects Know Your Customer (KYC) data.

20. Tether wallet address TB2wk received its first incoming TRX transfer of 180 TRX on December 27, 2025, at 7:31 A.M. U.T.C. That transfer came from a cryptocurrency address identified as tied to an undercover cryptocurrency exchange brokered by the target of another money-laundering investigation.

21. Tether wallet address TB2wk then received 20,000 USDT on that same date, which originated from a wallet address that was later seized by HSI and passed through a wallet that had been identified as belonging to a money broker believed to be engaging in money laundering.

22. Tether wallet address TB2wk sent the 20,000 USDT to three separate addresses attributed to the virtual currency exchange OKX, all three of which have been identified as associated with targets of other criminal investigations.

23. From December 28, 2025, to March 17, 2026, Tether wallet address TB2wk sent approximately 445,537 USDT to twenty-one (21) addresses associated with the virtual currency exchange OKX. Eight of those addresses have received funds from accounts related to targets of criminal investigations, belong to individuals that collect commission from money pickups, or have received funds from DEA undercover money pickups. Seven of those eight addresses have received a total of 470,700 USDT from the wallet that was the source of the first gas transaction to Tether wallet address TB2wk.

24. Between December 26, 2025, and March 25, 2026, Tether wallet address TB2wk had a total of 678 transfers, 540 inbound and 138 outbound. Higher inbound transfers typically indicate that an address is being used as a consolidation address, to accumulate funds before transferring or off ramping into fiat, to avoid unnecessary transfer fees.

25. On April 10, 2026, DEA executed a warrant issued in this district for the seizure of the equivalent amount of USDT associated with Tether wallet address TB2wk, resulting ultimately in the seizure of the Defendant Cryptocurrency.

26. The Defendant Cryptocurrency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) as property furnished or intended to be furnished in exchange for a controlled substance in violation of 21 U.S.C. §§ 841 and/or 846 or as property used or intended to be used to commit or facilitate the commission of such violations.

27. The Defendant Cryptocurrency also is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in violations of 18 U.S.C. §§ 1956, 1957, and/or 1960 or property traceable to such property.

WHEREFORE, the United States respectfully requests that a Warrant of Arrest In Rem be issued, that notice of this action be given to all parties who reasonably appear to be potential

claimants of interest in the property, that the Defendant Cryptocurrency be forfeited and condemned to the United States, and that the United States be granted such other relief as this Court deems just and proper, including the United States' costs and disbursements in this action.

Respectfully submitted,

JASON D. PARMAN
UNITED STATES ATTORNEY

By: s/ Haley Trogdlen McCauley
Assistant United States Attorney
260 West Vine Street, Suite 300
Lexington, Kentucky 40507
Phone: (859) 685-4831
haley.mccauley@usdoj.gov